In re JOEY'S STEAKHOUSE, LLC, Debtor(s).

Gary F. Seitz, Trustee, Plaintiff

v.

6130 West, LLC, Henry P. Alfano, John DeVirgilis, Robert Laflar, and Anthony Alberto, Defendants.

Bankruptcy No. 09–17170.
Adversary No. 11–745.

United States Bankruptcy Court, E.D. Pennsylvania.

June 14, 2012.

Gary F. Seitz, Esquire, Rawle & Henderson LLP, Philadelphia, PA, pro se.

Kenneth E. Aaron, Esquire, Lauren N. Schwimmer, Esquire, Weir & Partners LLP, Philadelphia, PA, for Defendants.

## OPINION

STEPHEN RASLAVICH, Chief Judge.

*Introduction*

Before the Court is the Trustee's Motion for Leave to Amend Complaint. The Motion is opposed by the Defendants. A hearing on the motion was held on May 3, 2012 after which the Court took the matter under advisement. For the reasons set forth below, the Motion will be granted in part and denied in part. The Trustee may file an amended complaint which is consistent with this ruling within 20 days of this date.[1]

*Summary of Holding*

Count I—Declaratory Judgment

- Basis for Contention: Defendants maintain that the proposed amendment to this count is either prejudicial or legally deficient.
- Holding: Plaintiff's request for leave to amend Count I will be denied because it fails to state a claim for a declaratory judgment.

Count II—Constructive Trust

- Basis for Contention: Defendants maintain that the proposed amendment to this count is either prejudicial or legally deficient.
- Holding: Plaintiff's request for leave to amend will be granted as the count sufficiently states a claim for a constructive trust.

Count III—Conversion

- Basis for Contention: Defendants maintain that the proposed amendment to this count is prejudicial or legally deficient.
- Holding: Plaintiff's request for leave to amend will be granted as the count sufficiently states a claim for conversion.

Count IV—Injunction

- Basis for Contention: Defendants maintain that the proposed amendment to this count is prejudicial or legally deficient.
- Holding: Plaintiff's request for leave to amend Count IV will be denied because it fails to state a claim for an injunction.

Count V—Unjust Enrichment

- Basis for Contention: Defendants maintain that the proposed amendment to this count is either time-barred, prejudicial or legally deficient.
- Holding: Plaintiff's request for leave to amend will be granted as the count sufficiently states a timely claim for unjust enrichment.

Count VI—Breach of Agreement (breach of contract)

- Basis for Contention: Defendants maintain that the proposed amendment to this count is either prejudicial or legally deficient.
- Holding: Plaintiff's request for leave to amend Count VI will be granted as the count sufficiently states a claim for breach of contract.

Count VII—Avoidance (preferential and/or fraudulent transfers)

- Basis for Contention: Defendants maintain that the proposed amendment to this count is either time-barred, prejudicial or legally deficient.

---

1. Although this complaint alleges both core and noncore jurisdictional matters, the Defendants do not consent to entry of a final judgment. *See* Answer ¶ 1.

- Holding: Plaintiff's request for leave to amend Count VII will be granted as the count sufficiently states a timely claim for avoidance.

Count VIII—Turnover

- Basis for Contention: Defendants maintain that the proposed amendment to this count is either prejudicial or legally deficient.
- Holding: Plaintiff's request for leave to amend Count VIII will be denied because it fails to state a claim for turnover or for an accounting.

Count IX—Unconscionable and Void

- Basis for Contention: Defendants maintain that the proposed amendment to this count is either prejudicial or legally deficient.
- Holding: Plaintiff's request for leave to amend Count IX will be denied because it fails to state a claim that the agreement may be voided as unconscionable.

Count X—Breach of Joint Venture/Fiduciary Duty

- Basis for Contention: Defendants maintain that the proposed amendment to this count is either prejudicial or legally deficient.
- Holding: Plaintiff's request for leave to amend will be granted as the proposed amendment sufficiently states a claim for breach of fiduciary duty arising out of a joint venture.

*Allegations*

In June 2008, the Debtor was formed by its president and sole shareholder Joseph Polutro to operate as a restaurant. Amended Complaint, ¶ 4. The establishment which it would operate already existed along with a bar and gentlemen's club located at 6130 W. Passyunk Avenue in Philadelphia. *Id.* ¶¶ 4, 5 The existing restaurant, bar and club were owned by the Defendants. *Id.* As part of a joint venture agreement, the Debtor's principal, an executive chef, would renovate the existing restaurant. *Id.* ¶ 13 To that end, the Debtor invested $323,000 into the enterprise. *Id.* ¶ 17 The Trustee's complaint alleges that the Defendants conspired to deprive the Debtor of the profits from the operation of that restaurant. *Id.* ¶¶ 14, 19. The Complaint calculates the Debtor's losses at more than $850,000. *Id.* ¶ 21.

On September 29, 2009, the Debtor commenced the instant bankruptcy case and the Trustee was appointed on the same day. On September 2, 2011, the Trustee filed a ten count complaint against the Defendants alleging causes of action related to breaches of the Joint Venture Agreement. On December 2, 2011, the Defendants filed an answer to the complaint. The Court entered a pretrial scheduling order and discovery commenced. On April 2, the Trustee filed the instant motion to amend; on April 23, the Defendants moved for summary judgment. This ruling deals solely with the Trustee's request.

*Applicable Legal Standard*

▉ Rule 15 [2] of the Federal Rules of Civil Procedure governs amendments of pleadings:

(a) *Amendments Before Trial.*

(1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e) or (f) whichever is earlier.

(2) *Other Amendments.* In all other cases, a party may amend its pleading

---

2. Made applicable by B.R. 7015.

only with the opposing party's written consent *or the court's leave.* The court *should freely give leave when justice so requires.*

Fed.R.Civ.P. 15(a) (emphasis added). Where a party must obtain consent to amend, the Supreme Court has made it clear that the presumption in favor of leave is "a mandate to be heeded." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). It furthers the policy of trying cases on their merits. *Id.* The precise delineation of when leave should be granted or denied is impossible; therefore, the determination is left to the sound discretion of the trial judge. *Rolo v. City Investing Co. Liquidated Trust,* 155 F.3d 644, 645 (3d Cir.1998). This requires the Court to consider the positions of *both* parties and the effect that the request will have on them. 6 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1487 (3d ed.) For that reason, the Court may deny a request to amend when the moving party has demonstrated undue delay, bad faith or dilatory motive, or where the amendment would prejudice the opposing party. *See Foman, supra, id.; Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir.2002) Equally, an amendment will be denied where it is futile. *Id.* As the moving party, the Trustee bears the burden of proof in explaining the reasons for delay in seeking leave to amend. *See Payne v. City of Phila.,* 2005 WL 1863188, *2 (E.D.Pa.Aug. 3, 2005).

### Proposed Amendment

The motion seeks to add one defendant, to substitute another, and to correct a typographical error. The defendant to be added is New Club, LLC. The defendant to be substituted is the estate of one of the defendants since deceased. The typographical error sought to be corrected is an incorrect dollar amount in the demand.

### Defendants' Objection

The Defendants do not object to all three proposed amendments. They point out that substitution of a decedent's estate does not require an amendment. *See* Defendants' Objection ¶ 10. Although Defendants make no mention of the Trustee's request to correct what is characterized as a typing error, the Court is empowered to conform the pleadings to the proofs. *See* F.R.C.P. 15(b)(2). It is only the amendment to add a defendant to which they object.

And on that score, the Defendants make two principal objections: one on limited and specific grounds and the other for general reasons. The *limited* challenge is as to Counts V and VII. Defendants contend that these counts are avoidance claims which are now time-barred. The *general* objection is made as to the remaining 8 counts and is two-fold: first, the proposed amendments fail to state a claim against New Club; and second, even if a claim is stated as to New Club, then the delay in bringing them now is unduly prejudicial.

### Timeliness of Avoidance Claims

█ Beginning with the two avoidance counts, the Court observes that a proposed amendment which is untimely will be found to be futile. *See Riad v. U.S.,* 2012 WL 986753, at *4 (E.D.Pa. March 22, 2012). The Defendants say that it is too late to add New Club to either Count V or VII because of the Bankruptcy Code's limitations for avoidance claims. Section 546(c) of the Code provides that:

An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) the later of—

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). Defendants explain that more than two years have passed since the case was commenced and so these two counts are stale.[3] Neither, Defendants add, is that deadline subject to equitable tolling. Finally, they say, if the Court does hold that this provision may be equitably tolled, then the Trustee has not demonstrated that his claim against New Club relates back in time for limitations purposes under Rule 15. *See* Defendants' Objection, ¶¶ 17–36.

*Relation Back*

The same rule which provides for amendment of pleadings also preserves the timeliness of certain amendments.[4]

(c) *Relation Back of Amendments.*

(1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

*See* F.R.C.P. 15(c). As the Third Circuit has explained, three conditions must be met in order for an amendment adding a party to relate back to the original complaint for statute of limitations purposes:

(1) that the claim against the newly named defendants arose out of the same conduct, transaction, or occurrence set forth in the original complaint,

(2) that within the 120–day period for service of the summons and complaint, the newly named party have received notice of the institution of the action

---

**3.** That deadline was September 29, 2011. There is no dispute that the deadline had passed when the request for leave to amend was filed.

**4.** The Court is aware that the Federal Rules contain a specific rule regarding the joinder of parties. Likewise made applicable by the Bankruptcy Rules, Rule 20 of the Federal Rules of Civil Procedure provides that persons ... may be joined in one action as defendants if the claims against all defendants arise out the same transactions or occurrences and common questions of law and fact will arise in the action. *See* F.R.C.P. 20(a)(2).

Although this rule does not mention any limitations period, it is not excepted from the applicability of Rule 15(c)'s relation back requirement. Thus, an amendment to join a defendant after the right to amend has passed must likewise relate back in time as required by Rule 15(c). *See Commodity Futures Trading Commission v. American Metal Exch. Corp.*, 693 F.Supp. 168, 189 (D.N.J.1988) (holding that leave to amend was required to add new parties.) *See also* 4 Moore's Federal Practice, § 20.02[2][a][iii] (stating that Rule 20 should be subject to Rule 15(c)'s relation back requirement).

such that it will not be prejudiced in maintaining a defense on the merits, and (3) that within that same time period of time, the newly named party must have known, or should have known, that "but for a mistake," he or she would have been named as a defendant in the first place.

*Singletary v. Pennsylvania Dept. of Corrections.*, 266 F.3d 186, 194 (3d Cir.2001) The doctrine is distinct from "equitable tolling" whereby the reason that the plaintiff missed the period is due to defendant's affirmative concealment or other circumstance beyond plaintiff's control. *Watkins v. Lujan*, 922 F.2d 261, 263 (5th Cir.1991). If the proponent of an amendment can show that its change would relate back to the original, timely-filed claim, then it may be allowed on legal grounds without having to resort to equity.

*Same Transaction*

 Beginning with commonality, the Court observes that the claims against New Club do not amend the substantive claims against the other Defendants. With slight exceptions,[5] they remain as they were *verbatim*. In fact, the proposed changes do no more than add New Club to the universe of already existing defendants. Only the number of persons in the definition of "Defendants" has increased from five to six. There are, then, simply no material changes to the allegations of fact or conclusions of law.

*Notice*

As to whether New Club received notice of the suit during the summons service period, the Trustee maintains that New Club received both actual as well as con-

structive notice. Motion ¶ 25. Actual notice occurred, explains the Trustee, by virtue of New Club having shared the same address as two of the defendants. *Id.* 26. Constructive notice may also be found from the fact that New Club and the existing Defendants share the same attorney. *Id.* 27. Finally, the Trustee adds that New Club is directly involved with Defendants business, i.e., "inextricably intertwined," such that notice may likewise be inferred. *Id.* 30.

For their part, Defendants raise two points: first, the fact that New Club shared the same registered office address with other Defendants proves nothing. No agency relationship is alleged. Objection ¶ 27. Second, there is no evidence of a shared attorney during the 120 day summons period. New Club explains that the Weir firm had not yet entered its appearance for New Club. *Id.* 29.

 For purposes of the relation back doctrine, notice can be "actual, constructive, or imputed." *Singletary*, 266 F.3d at 195. The Third Circuit considers "imputed" notice to be a form of "constructive" notice. *In re Color Tile, Inc.*, 475 F.3d 508, 512 (3d Cir.2007). The Third Circuit has continued to adhere to the proposition that imputed notice falls under the doctrine of constructive notice, so that imputed notice under Rule 15(c)(3) requires either a shared attorney or an identity of interest. *Garvin v. City of Phila.*, 354 F.3d 215, 222–223 (3d Cir.2003).

*Shared Attorney*

 Where an existing defendant and a party to be added share the same counsel, constructive notice of the suit

---

**5.** The amended complaint would increase the amount of money that the Debtor invested into the enterprise. *Compare* Complaint, ¶ 15 with Amended Complaint, ¶ 17. It also states

that there may be more than one version of the parties' agreement. *Compare* Complaint, ¶¶ 20–21 with Amended Complaint, ¶ 23.

180

upon the latter party will be found to exist. *See Miller v. Hassinger,* 173 Fed.Appx. 948, 956 (3d Cir.2006) (citing *Singletary v. Pa. Dept. of Corrections,* 266 F.3d 186(3d Cir.2001)). Under this theory, "when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Singletary,* 266 F.3d at 196. As New Club correctly points out, the record does not demonstrate that the firm which represents the original defendants (Weir & Partners), also represented New Club when the summons was pending. As of the filing of its Objection, New Club goes on, the Weir firm had yet to enter its appearance on New Club's behalf. Without more, then, the Court cannot find that New Club had constructive notice of the suit via common counsel.

*Identity of Interest*

■ Present parties, however, may be sufficiently related to future parties such that notice of suit may likewise be imputed to the latter. Referred to as "identity of interest," the newly named Defendant and the original Defendants may be so closely intertwined in their business operations or other activities that the filing of suit against one effectively provides notice of the action to the other. 6A Charles Alan Wright et al., *Federal Practice And Procedure* § 1499 (3d ed.) The Supreme Court has endorsed this method of imputing notice for Rule 15(c)(3). *See Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986) ("Timely filing of a complaint, and notice within the limitations period to the party named in the complaint, permit imputation of notice to a subsequently named and sufficiently related party."); *see also Singletary,* 266 F.3d at 198 (remarking on Supreme Court's endorsement of this method).

■ The Trustee sees an identity of interest between New Club and Defendant 6130 West LLC in their shared address. 6130 West has its registered office address at 1707 Rittenhouse Square, Philadelphia. This defendant was served at that address. *See* Executed Summons Service, Docket # 3. New Club also has its registered office address at 1707 Rittenhouse Square in Philadelphia. *Compare* Department of State filing for defendant 6130 West LLC (Ex. A to Motion) with same document for New Club LLC (Ex. B to Motion). While there is no denying that the address is the same, that is not necessarily a guarantee that New Club learned of the suit when 6130 West was served with the summons. There is no mention in the record as to whether the parties shared the same registered agent who would have been duty bound to inform New Club of the suit. In short, the fact of the common address is probative but inconclusive.

What helps the Trustee's case is what is attached to his Response. Exhibit A to that document is a lease between Passyunk Avenue Realty Enterprises LLC and New Club dated October 2008. It represents the leasehold of the real estate upon which is located the bar, nightclub and restaurant of the joint venture; that is, 6130 West Passyunk Avenue. New Club is the lessee under the lease. Importantly, Defendant John DeVirgilis executed the lease on behalf of New Club as a member. *See* Trustee's Response, Ex. A. Mr. DeVirgilis was also served with the Complaint at that same address (1707 Rittenhouse Square, Philadelphia) as was 6130 West. *See* Executed Summons Service, Docket # 6. Thus, the record demonstrates that a principal of New Club is also among the original defendants served with the Complaint within the 120 days summons period. This constitutes timely, constructive notice upon

New Club for purposes of relation back under Rule 15(c).

*Expectation*

 Lastly, the Court turns to the question of whether New Club ought to have expected to have been named as a defendant earlier but for a mistake. At the hearing, New Club's counsel argued that the Trustee had not been "mistaken" in failing to name New Club sooner; rather, his lack of knowledge about New Club simply renders the rule inapplicable. Transcript of Hearing (T–), 5/3/12, 10. A leading commentator explains that in this context the classic example of mistake is misnomer; that is, when a plaintiff misnames or misidentifies a party in its pleadings. 3 *Moore's Federal Practice Civil* § 15.19[3][d]. However, mistake may also include the failure to name a party altogether:

> Relation back is not limited to the strict misnomer situation, however, provided the requirements of the rule are satisfied. In applying the rule, the focus is on the party to be brought in by the amendment. Relation back applies if that party knew or should have known (during the time allowed by Rule 4(m)) that it would be named but for an error. The rule asks what the defendant knew or should have known during this period, not what the plaintiff knew or should have known at the time of filing the original complaint. This approach, announced by the Supreme Court in *Krupski v. Costa Crociere S.p.A.*,[6] resolved a circuit split. Before *Krupski*, many courts had held that a lack of knowledge as to who the correct party was did not constitute a "mistake," so that a plaintiff who did not know the identity of the defendant could not rely on relation

back. Other courts disagreed with this view, finding no linguistic basis for the distinction in the rule. These courts held that both misnomer and lack of knowledge of the proper defendant could constitute a "mistake concerning the proper party's identity" as required by Rule 15(c)(1)(C)(ii).

In *Krupski*, the Supreme Court sided with this second, better reasoned, line of authority. Information in the plaintiff's possession is relevant to the relation back inquiry only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity. For this purpose, *knowledge of a party's existence may not be equated with the absence of mistake.* A plaintiff who knows of a person's existence may still be mistaken as to the person's status, or as to the role the person played in the transaction or occurrence, or in other ways. Moreover, the reasonableness of the mistake is not at issue; the relevant inquiry is whether the party to be brought in knew that the action would have been brought against it but for the mistake, reasonable or not.

*Id.* (emphasis added). *See also Arthur v. Maersk, Inc.*, 434 F.3d 196, 208 (3d Cir. 2006) (holding that mistake, for purposes of this rule, may result from lack of knowledge) Based on the record, New Club should have expected to be a defendant in this suit. New Club is the lessee of the real property on which the restaurant is located. *See* Lease attached to Trustee's Response. Defendants themselves contend that the Debtor received prepetition payments from New Club so the parties are in some degree of privity. They also share a common business address as discussed, *su-*

---

6. *Krupski v. Costa Crociere S. p. A.,* —— U.S. ——, 130 S.Ct. 2485, 177 L.Ed.2d 48, 57–58 (2010).

*pra.* All of this suggests that the proposed amendment is not a complete surprise to New Club. Having found that all three conditions for applying this rule's relation back doctrine exist, the Court finds the addition of New Club to the suit is not time-barred.

*Delay and Prejudice*

■■■■■ As to the other 8 counts, Defendants argue first that the delay in bringing such claims against New Club is unfair. The Third Circuit has emphasized that prejudice to the non-moving party is the touchstone for the denial of an amendment. *Arthur v. Maersk, Inc.*, 434 F.3d at 204. That being said, the non-moving party cannot merely claim prejudice, but "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.1989) (citations omitted). In other words, the Defendants bear the burden of proof as to prejudice. *See AMS Construction Co. v. Reliance Insurance Co.*, 2006 WL 1967336, at *3 (E.D.Pa. July 12, 2006). In and of itself, delay does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue' placing an unwarranted burden on the court and may work prejudice to the adversary. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir.2001). A potential defendant is prejudiced from delay if it "must set about assembling evidence and constructing a defense when the case is already stale." *Curry v. Johns–Manville Corp.*, 93 F.R.D. 623, 626 (E.D.Pa.1982).

■■■ Defendants identify unfairness in the fact that discovery has just completed and that they have filed a Motion for Summary Judgment. Defendants' Objection, ¶ 38. Allowing the Trustee to add a new defendant, they say, would cause them to incur significant costs and delay trial. *Id.* ¶ 39. At the inception of the bankruptcy, Defendants contend, the Trustee failed to promptly use his investigatory powers which would have revealed New Club's identity sooner. *Id.* ¶ 41. Available information showed that the Debtor was receiving checks from New Club during the 3 months prior to bankruptcy. *Id.* ¶ 40. It would, then, be unfair, the Defendants conclude, to allow the Trustee to add New Club at this late stage of the case.

The Trustee's rejoinder is that he made numerous requests of the Debtor for its books and records. Trustee's Response, ¶ 15. He explains that the Debtor's principal testified that the books and records were kept at the restaurant and that because the Defendants locked him out of the restaurant he could not deliver that information to the Trustee. *Id.* ¶ 16. When the Trustee finally did get the records, they contained no mention of New Club. *Id.* ¶ 15. He first learned of New Club, the Trustee explained, when he received the Defendants' initial disclosures in January 2012. Motion, ¶ 14. To the Trustee's mind, if there is any delay here, it is not on his account; he was working as diligently as possible given existing restraints. Response, ¶¶ 15–17.

The Court finds neither delay on the Trustee's part nor any prejudice assuming such delay were demonstrated. The record shows that his attempts at investigation were frustrated by the very persons claiming prejudice. And the contention that the Debtor's receipt of checks from New Club should have put him on notice of the claims against New Club are an exaggeration. It is very possible that the Debtor received prepetition checks from a number of sources. But even assuming that the Trustee should have probed deeper and sooner into Debtor's affairs, the

Court does not see how the Defendants are harmed as a result. The proposed amendment would not change the factual basis or legal theories; only New Club is added to the already existing universe of defendants. And because there are no material substantive changes to either the allegations or law, it is hard to see how this will place on the Defendants any additional burden of trial preparation. Moreover, New Club and the other defendants share the same counsel so the learning curve—to the extent one exists—cannot be all that steep. But even assuming it is, the Defendants will be granted more time to prepare if it is needed. In short, the Court sees no risk of harm to the Defendants in granting leave.

*Failure to State a Claim*

 Alternatively, Defendants maintain that adding New Club would be futile because no viable claim is stated against it. An amendment is futile if it would not survive a motion to dismiss for failure to state a claim upon which relief could be granted. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). In determining whether the amendment would be futile, the district court applies the standard for motions under Fed.R.Civ.P. 12(b)(6) ("failure to state a claim upon which relief may be granted"); *see id.* Accordingly, the Court accepts as true all of the allegations contained in the complaint and draws reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus,* 551 U.S. 89, 93–94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam). To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

*Declaratory Judgment*

 The Court begins with the request for a declaratory judgment. Although the Complaint does not state the *statutory* predicate for declaratory relief,[7]

7. Pennsylvania is one of 43 states to have adopted the Uniform Declaratory Judgment Act. *See* 42 P.S. Pt. VII Ch. 75. The act provides that "[c]ourts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42 Pa.C.S. § 7532. As pertains to the case *sub judice,* the act also provides that "[a]ny person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa.C.S. § 7533. The Pennsylvania act serves much the same purpose as the federal act. The purpose of awarding declaratory relief is to settle and make certain rights or legal status of parties. *Geisinger Clinic v. Di*

*Cuccio,* 606 A.2d 509, 519, 414 Pa.Super. 85, 109 (Pa.Super.1992), appeal denied 637 A.2d 285, 536 Pa. 625, reconsideration denied, certiorari denied 513 U.S. 1112, 115 S.Ct. 904, 130 L.Ed.2d 788; *see also Curtis v. Cleland,* 552 A.2d 316, 318, 122 Pa.Cmwlth. 328, 331 (Pa.Cmwlth.1988) (explaining that the Declaratory Judgments Act is remedial in nature and is intended to provide relief from uncertainty and establish various legal relationships). A declaratory judgment is not appropriate to determine rights in anticipation of events that may never occur, but is appropriate where there is imminent and inevitable litigation. *Pennsylvania Turnpike Com'n v. Hafer,* 597 A.2d 754, 756, 142 Pa.Cmwlth. 502, 507 (Pa.Cmwlth.1991) *Shaffer–Doan ex rel. Doan v. Com., Dept. of Public Welfare,* 960 A.2d 500, 517 n. 32 (Pa.Cmwlth.2008) ("Declaratory judgments are nothing more than judicial searchlights, switched on at the behest of a litigant to illuminate an existing legal right, status, or other relation, and they

federal courts, including bankruptcy courts, may grant such relief pursuant to the Declaratory Judgment Act ("the Act"), 28 U.S.C. § 2201. That Act provides, in relevant part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. When there is an actual controversy between the parties, the Act allows a court to settle the parties' respective rights, even before there is a violation of law, exercise of right, or breach of duty. *In re Downingtown Indus. & Agr. School,* 172 B.R. 813, 819 (Bankr.E.D.Pa.1994); *see also Océ–Office Systems, Inc. v. Eastman Kodak Co.,* 805 F.Supp. 642, 646 (N.D.Ill. 1992) ("Resolving the uncertainty and anxiety resulting from a looming lawsuit is, indeed, the purpose of the Declaratory Judgment Act."). A declaratory judgment may well be appropriate in the context of a contract dispute even before an actual breach of the contract occurs. *See, e.g., Hardware Mutual Casualty Co. v. Schantz,* 178 F.2d 779, 780 (5th Cir.1949) ("The purpose of the Declaratory Judgment Act is to settle 'actual controversies' before they ripen into violations of law or a breach of some contractual duty."); *American Type Founders, Inc. v. Lanston Monotype Machine Co.,* 137 F.2d 728, 729 (3d Cir.1943) (court "entertain[ed] no doubt that an actual controversy exist[ed] within the purview of the Declaratory Judgment Act" where plaintiff sought declaration of right to cancel contract while defendant sought its enforcement); *Lehigh Coal &*

*Navigation Co. v. Central R.R. N.J.,* 33 F.Supp. 362, 365 (E.D.Pa.1940) ("Construction and interpretation of written instruments . . . is the principle function of a declaratory judgment proceeding.").

■ The Act is intended to address uncertainty as to legal rights between the parties towards expediting a conclusion of a pending dispute or avoiding one altogether. The parties here, however, are well past that point; they are engaged in full-blown litigation. Each side is clear as to what its respective rights are in their joint venture and that is with regard to profits as well as personal property. Adjudication of these issues will perforce determine the rights of each party. In other words, the request for declaratory relief is, at this juncture, moot.

*Constructive Trust*

■ Count II requests that the Court impress upon the restaurant and its proceeds a constructive trust. Under Pennsylvania law, "[a] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Kern v. Kern,* 892 A.2d 1, 8 (Pa.Super.2005). A constructive trust is not really a trust at all but rather an equitable remedy. *Buchanan v. Brentwood Savings and Loan Ass'n,* 457 Pa. 135, 150, 320 A.2d 117, 126 (1974). Like all remedies in equity, it is flexible and adaptable. *Id.* Generally, however, an equitable duty to convey property to another arises only in the presence of fraud, duress, undue influence, mistake, or abuse of a confidential relationship. There is, however, no

may not be used to search out new legal doctrines.") *Crown Cork & Seal Co., Inc. v. Borden, Inc.,* 779 F.Supp. 33, 35 (E.D.Pa. 1991) (inasmuch as request for declaratory relief constituted "procedural fencing" and

litigation costs manufacturer sought to avoid by suit were not the type of "uncertainty and insecurity" that Acts were intended to relieve); see also 11 *Standard Pa. Prac. 2d* § 66:4.

rigid standard for determining whether the facts of a particular case require a court of equity to impose a constructive trust; the test is merely whether unjust enrichment can be avoided. *Koffman v. Smith,* 453 Pa.Super. 15, 32, 682 A.2d 1282, 1291 (Pa.Super.1996). The presumption of right in an action to impose a constructive trust lies in favor of the one in whom legal title is situated. *In re McKay,* 110 B.R. 764, 770 (Bankr.W.D.Pa.1990) (*citing Metzger v. Metzger,* 338 Pa. 564, 14 A.2d 285 (1940)).

■ The complaint alleges that the restaurant is the property of the debtor; that it was wrongly taken from the debtor; that the money it generated was likewise wrongly taken; and that under the circumstances the defendants are unjustly profiting from their wrongful conduct. As a matter of pleading, this is enough to state a viable claim for a constructive trust.

*Conversion*

■ The same may be said of the conversion claim in Count III. Conversion is the "deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 659 n. 3 (Pa.Super.2000). Again, the restaurant is alleged to be the estate's property. Notwithstanding, such property is alleged to have been wrongfully taken from the Debtor when the Defendants locked out Debtor's principal. These circumstances suggest a lack of consent. The motion to dismiss the conversion count, therefore, will likewise be denied at this juncture.

*Injunctive Relief*

■ Count IV seeks to enjoin the Defendants from the restaurant. An injunction is a court order that can prohibit or command virtually any type of action. *Big Bass Lake Comm. Ass'n v. Warren,* 950 A.2d 1137, 1144 (Pa.Commw.2008). It is an extraordinary remedy that should be issued with caution and "only where the rights and equity of the plaintiff are clear and free from doubt, and where the harm to be remedied is great and irreparable." 15 *Standard Pennsylvania Practice 2d,* § 83:2 (2012) *citing Schaeffer v. Frey,* 403 Pa.Super. 560, 589 A.2d 752 (1991). The required elements of injunctive relief are: a clear right to relief; an urgent necessity to avoid an injury that cannot be compensated in damages; and a finding that greater injury will result from refusing, rather than granting, the relief requested. *Id.* at § 83:19 *citing Unified Sportsmen of Penna. v. PGC,* 950 A.2d 1120 (Pa. Commw.2008). Even where the essential prerequisites of an injunction are satisfied, the court must narrowly tailor its remedy to abate the injury. *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.,* 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977). It has often been said that "the decree of a chancellor is of grace, not of right. This does not, of course, mean that decree is to be granted or withheld merely at the whim or caprice of the chancellor." *Asbury v. Caroll,* 54 Pa.Super. 97, 1913 WL 4747, at *3 (Dec. 17, 1912). The power to grant or to refuse an injunction "rests in the sound discretion of the court under the circumstances and the facts of the particular case...." *Rick v. Cramp,* 357 Pa. 83, 91, 53 A.2d 84, 88 (1947).

■ The amended complaint alleges generally that the Trustee will be left with no adequate remedy at law to recover the restaurant or its proceeds should the Defendants not be enjoined. Amended Complaint ¶ 48 This, however, begs the question why this is so. To be sure, assuming that the Trustee is correct regarding ownership of the establishment, there is a

clear right to *some* measure of relief. However, that does not demonstrate that *extreme* relief is warranted. There is simply no explanation as to urgency. Neither is there an allegation as to why more harm would result from *not* enjoining the Defendant. In short, even under the relatively liberal pleading standard, this claim is insufficient for stating a claim for an injunction. Accordingly, it will be dismissed but without prejudice.

### Unjust Enrichment

 Count V is entitled Unjust Enrichment. A claim for unjust enrichment is not materially different from the count requesting imposition of a constructive trust. "An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law." *Sevast v. Kakouras*, 591 Pa. 44, 915 A.2d 1147, 1153 n. 7 (2007). "A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa.Super.2001). The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Stoeckinger v. Presidential Fin. Corp. of Delaware Valley*, 948 A.2d 828, 833 (Pa.Super.2008). Given the allegation that the restaurant was wrongly taken from Debtor and that the Defendants are profiting from this wrongdoing, Count V states a claim for unjust enrichment.

### Breach of Agreement

 Count VI alleges the existence of an agreement between the parties, the Debtor's full performance, breaches by Defendants of such agreement, and injury resulting from the Defendants' failure to perform. *See* Amended Complaint ¶¶ 57–62. Although styled as Breach of Agreement, Count VI alleges basic common law breach of contract. To state a claim for breach of contract, "a plaintiff must plead: 1) the existence of a contract, *including its essential terms;* 2) a breach of duty imposed by the contract; and 3) resultant damage." *Kane v. State Farm Fire & Cas. Co.*, 841 A.2d 1038, 1042 (Pa.Super.2003) (emphasis added).

 Count VI pleads the existence of a contract: the parties' relationship is based upon the joint venture agreement. It also pleads the Defendants'[8] breach of that agreement: they allegedly conspired to lock Debtor out of the premises. As a result of that breach, the count goes on, the Debtor suffered damages of more than $800,000. Where the count becomes somewhat unclear is as to the material (i.e., essential) terms of the agreement. Admittedly, while the Amended Complaint never expressly explains what the Debtor's "obligations" under the agreement were (*see* Amended Complaint, ¶ 13) it can be inferred that the Debtor was required to develop the restaurant through its principal's expertise, investment of capital and other property. On the other side of the coin, it appears that the Defendants provided the existing restaurant which would

---

8. New Club also maintains that it cannot be guilty of breach of contract because it was not in existence until after the joint venture was entered into. T–8. In his amendment, the Trustee alleges that various versions of the agreement have been identified. Amended Complaint ¶ 22. That, then, is a factual matter which may be addressed better on summary judgment.

be renovated.[9] Given that the joint venture contemplated the addition of the Debtor's restaurant to the Defendant's already existing bar and night club, all parties envisioned making money from the arrangement. The Debtor would get the profits from the restaurant, and the Defendants expected increased profits from the existing bar and night club as a result of the restaurant's synergistic effect. To be sure, having a copy of the parties' agreement attached to the complaint might have clarified all of this, but this seems a fair reading of what is alleged. Accordingly, the Court finds that a breach of contract has been stated.

*Constructive Fraudulent Transfer*

■ Count VII is entitled "avoidance" and seeks to recover transfers to the Defendants on a theory of "constructive" fraud: [10]

The trustee may avoid any transfer ... of an interest of the debtor in property, or any obligation ... incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

* * *

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

*See* 11 U.S.C. § 548(a)(1)(B); *see also In re D'Ambrosio,* 452 B.R. 562, 571 Bankr. E.D.Pa.2011 (listing elements) Typically, where a count alleges fraud, a heightened standard of pleading is required. *See Saporito v. Combustion Eng., Inc.,* 843 F.2d 666, 675 (3d Cir.1988). However, courts in this circuit continue to follow the rule that "[a] trustee is generally afforded greater liberality in pleading fraud, since he is a third-party outsider to the debtor's transactions. Nevertheless, these relaxed Rule 9(b) requirements require the trustee to do more than merely identify the allegedly fraudulent transfers." *Aphton Corp. v. Sonafi Pasteur (In re Aphton Corp.),* 423 B.R. 76, 85 (Bankr.D.Del.2010) (footnotes omitted); *see also Moratzka v. Pomaville (In re Pomaville),* 190 B.R. 632, 637 (Bankr.D.Minn.1995) (explaining that "unlike the usual civil case where a plaintiff at least has the advantage of being a party to the underlying transaction, a bankruptcy trustee must rely almost entirely on a third party (the debtor) to provide the

---

**9.** The restaurant is located on the real property which New Club holds as tenant. *See* Ex. A to Trustee's Response.

**10.** Interspersed throughout this count are references to a preferential transfer. *See e.g.* ¶¶ 67, 71. This perhaps explains why the Count is generally entitled Avoidance as opposed to Fraudulent Transfer. In any event, the allegations do not support a preference claim chiefly for the reason that the Amended Complaint does not allege an antecedent debt, a *required element* under § 547. Accordingly, the count will be judged on whether it states a fraudulent transfer.

188

information necessary to uncover avoidable transfers.")

■ Here, the complaint alleges an interest in the property; to wit, the restaurant. The Debtor is alleged to have put in upwards of $323,000 into that business. Amended Complaint ¶ 17. A transfer is likewise alleged notwithstanding that the business is alleged to have been forcibly taken from him. *Id.* ¶ 19. "Transfer" is broadly defined in the Bankruptcy Code to include *involuntary* transfers as well as voluntary. *See* 11 U.S.C. § 101(54)(D); *see also In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211–212 (3d Cir.2006) (noting broad definition of transfer) and *see also In re Walker*, 2005 WL 6522758, at *10 (Bkrtcy.E.D.Pa.May 31, 2005) (noting inclusion of involuntary transfers in definition) The complaint alleges that such transfer occurred while the debtor was insolvent. Amended Complaint ¶ 69 As to exactly when the "transfer" occurred, the Amended Complaint is not specific but it can be inferred that it occurred within the two years prior to bankruptcy (9/23/07 to 9/23/09). It is alleged that the parties memorialized their agreement in June 2008 (¶ 22) so it must have occurred after that date. Finally, because the Debtor has not received any payment from the Defendants, (*Id.* ¶ 69), there was no exchange of reasonably equivalent value. On a pleading level, and given the not uncommon disadvantage to which a trustee is subject regarding a debtor's prepetition history, these allegations—albeit somewhat thin—are enough to survive a motion to dismiss even under the heightened pleading standard applicable to fraud.

*Turnover and Accounting*

Count VIII demands from the Defendants that they turn over the restaurant and Debtor's membership interest in the joint venture. Amended Complaint, ¶ 77. The same count also demands an accounting of all proceeds from the restaurant. *Id.* ¶ 78.

■ The Bankruptcy Code provides that property of the estate shall be turned over to the trustee. *See* 11 U.S.C. § 542(a). The essential element of a turnover action is that the property sought by the trustee is, in fact, property of the estate. *In re White*, 389 B.R. 693, 699 (9th Cir. BAP 2008). However, a turnover action is not proper where a bona fide dispute exists. *See In re Allegheny Health Education and Research Foundation*, 233 B.R. 671, 677 (Bankr.W.D.Pa.1999) *citing U.S. v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C.Cir.1991) ("It is settled law that turnover actions under § 542 cannot be used to demand assets whose title is in dispute") *see also In re 2045 Wheatsheaf Associates*, 1998 WL 910228 *10 (Bankr.E.D.Pa.1998) (quoting *In re Johnson*, 215 B.R. 381, 386 (Bankr.N.D.Ill.1997), to the effect that "[t]urnover under § 542 of the Code 'is not intended as a remedy to determine disputed rights of parties to property. Rather, it is intended as a remedy to obtain what is acknowledged to be property of the bankruptcy estate.'"); *In re FLR Company, Inc.*, 58 B.R. 632, 634 (Bankr.W.D.Pa.1985) ("Implicit in the bankruptcy context of turnover is the idea that the property being sought is clearly the property of the Debtor but not in the Debtor's possession. Turnover, 11 U.S.C. § 542, is not the provision of the Code to determine the rights of the parties in legitimate contract disputes.") The Third Circuit has explained that a "bona fide dispute" exists only when there is "a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." *B.D.W. Associates v. Busy Beaver Bldg. Ctrs.*, 865 F.2d 65, 66 (3d Cir.1989) (quoting *In re Busick*, 831 F.2d 745, 746 (7th Cir.1987)

(quoting *In re Lough*, 57 B.R. 993, 997 (Bankr.E.D.Mich.1986))).

 The Trustee, as expected, alleges in this regard that the restaurant and the Debtor's interest in the venture is property of this bankruptcy estate. Amended Complaint, ¶¶ 23, 26. Yet even taking these allegations as true, there is no denying here that the Defendants dispute the Trustee's claims to the restaurant. The Defendants have already filed an answer to the complaint denying the right to turnover as well as a motion for summary judgment which contests the Trustee's premises. Accordingly, the Trustee's request for leave to plead a turnover count must be denied.

 The same result must obtain as to the demand for an accounting. Section 543 of the Bankruptcy Code requires any *custodian* of estate property to file an accounting of property of the debtor or proceeds. 11 U.S.C. § 543(b)(2) (emphasis added). The Code defines "custodian" as

(A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;

(B) assignee under a general assignment for the benefit of the debtor's creditors; or

(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11). *See In re Mushroom Transportation Co., Inc.*, 366 B.R. 414, 437 (Bkrtcy.E.D.Pa.2007) *quoting* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 310 (1977) (observing that legislative history explains that the term "custodian" refers to "prepetition liquidator of debtor's prop-

erty, such as assignee for benefit of creditors, a receiver of debtor's property, or administrator of debtor's property as well as other officers of the court if their function is substantially similar to those of a receiver or trustee") The Defendants are not alleged to have any such status other than joint venturer with the Debtor. They are neither receiver, assignee nor trustee. For that reason, no claim for an accounting under § 543 can be stated and leave to amend this count will be denied.

*Unconscionable and Void*

It is alleged in Count IX that the conduct of the Defendants constitutes grounds for voiding the agreement outright. Simply put, says the complaint, the Defendants have acted unconscionably thereby entitling the Trustee to avoidance.

 A contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it. *See Denlinger, Inc. v. Dendler*, 415 Pa.Super. 164, 177, 608 A.2d 1061, 1068 (Pa.Super.1992) citing *Witmer v. Exxon Corp.*, 495 Pa. 540, 551, 434 A.2d 1222, 1228 (1981). The aspects entailing lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectively. *See Clerk v. First Bank of Delaware*, 735 F.Supp.2d 170, 181 (E.D.Pa.2010); *and see generally* 17A Am.Jur.2d Contracts § 278 (2006). Here, there is no allegation that the parties somehow bargained from unequal footing. The term joint venture is used throughout the complaint which suggests that they negotiated at arms length. And given that the pleading neither attaches the agreement nor states its terms, the Court cannot tell if it is unreasonably skewed in Defendants' favor. For both of

these reasons, Count IX fails to plead a claim of unconscionability.

*Breach of Joint Venture Fiduciary Duties*

Count 10, the last count, alleges a breach of the parties' joint venture agreement and the corresponding fiduciary duty. Where parties have entered into a joint venture, there exists a fiduciary duty between them. *ITP, Inc. v. OCI, Co. Ltd.*, 2012 WL 1019604, at *6 (E.D.Pa. Mar 26, 2012) (stating that "a joint venturer owes a fiduciary duty of the utmost good faith and must act toward his associate with scrupulous honesty"). In order to sufficiently plead a claim for breach of joint venture, a plaintiff first must plead the elements of a joint venture. *AT&T Corp. v. Synet, Inc.*, 1997 WL 109969 at *6 (N.D.Ill. Feb. 13, 1997). As one Pennsylvania court has explained, a joint venture is a species of contract which is influenced by partnership principles:

> A joint venture is not a status created or imposed by law; it is a relationship voluntarily assumed and arising wholly from contract. 2 Williston on Contracts 557, § 318A (3rd ed. 1959). Whether persons have engaged in it must depend primarily upon their intention as expressed in their agreement and the construction they have placed upon it. "To constitute a joint venture certain factors are essential: (1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; (2) profits must be shared among the parties; (3) there must be a 'joint proprietary interest and right of mutual control over the subject matter' of the enterprise; (4) usually, there is a single business transaction rather than a general and continuous transaction." *McRoberts v. Phelps*, 391 Pa. 591, 599, 138 A.2d 439, 443–444 (1958). A joint venture partakes in many ways of a

partnership, the principal difference being that it usually, though not necessarily, applies to a single transaction instead of being formed for the conduct of a continuing business. *West v. Peoples First National Bank & Trust Co.*, 378 Pa. 275, 281–282, 106 A.2d 427, 431 (1954).

The rights, duties, and obligations of joint venturers, as between themselves, depend primarily upon the terms of the contract by which they assume that relationship. 46 Am.Jur.2d, Joint Ventures § 36.

*See Snellbaker v. Herrmann*, 315 Pa.Super. 520, 526, 462 A.2d 713, 716 (1983); *Bernsten v. Balli Steel, PLC*, 2008 WL 862470, at *3 (E.D.Pa. March 31, 2008).

Although the joint venture agreement is neither attached to the complaint nor specifically referenced, some conclusions may be drawn from what is alleged. Beginning with member contributions, the complaint specifically sets forth only what Debtor put into the enterprise. No specific mention is made of what the Defendants' contribution was; however, it seems clear that they "contributed" the real estate for what would become the "entertainment facility," i.e., restaurant, bar and night club. The same can be said about profits. The Debtor alleges that it was promised the profits from the restaurant and given a say in how it was to be managed. Amended Complaint ¶ 92 As to profits for the Defendants, all that is said is that they had an "expectation" of profits. *Id.* ¶ 88 Notwithstanding, it is again fair to infer that if the Debtor would get the profits from the restaurant, then the Defendants would get the profits from the existing bar and club. As explained, *supra*, the Defendants counted on enhanced business at their bar and nightclub from the new and refurbished restaurant next door. As to joint

191

interest and control, both the Debtor and the Defendants are alleged to have a common interest in the enterprise and a right to govern the conduct of the other members. *Id.* ¶¶ 87, 90 Finally, the joint venture is limited to the creation of the "entertainment facility;" to wit, the renovated restaurant along with the existing club and bar; no other projects were contemplated. In sum, while these are not the most comprehensive allegations of a joint venture, they will suffice for purposes of a motion to dismiss. The corollary to that finding is that an allegation that one or more of the Defendants breached that agreement means that they are guilty of a fiduciary failing as well.

*Summary*

The Plaintiff's motion for leave to amend the Complaint will be granted in part and denied in part without prejudice. Leave is granted to amend counts II, III, V, VI, VII, and X as proposed. The remaining counts fails to state a claim upon which relief may be granted and will be dismissed without prejudice.

An appropriate Order follows.

### ORDER

AND Now, upon consideration of the Plaintiff's Motion For Leave to Amend and Supplement the Complaint, the Defendants' Opposition thereto, after hearing held on May 3, 2012, and for the reasons set forth in the attached Opinion, it is hereby

ORDERED, that the Motion is granted in part and denied in part; and it is

FURTHER ORDERED the Plaintiff may amend Counts II, III, V, VI, VII, and X as proposed within 20 days of the date of this Order. The request to amend the

remaining counts is denied without prejudice.